OPINION
This appeal is taken from a final judgment of the Ashtabula County Court of Common Pleas. Appellant, James Marell Holley, appeals from his convictions for felonious assault with an accompanying firearm specification and having a weapon while under disability.
At approximately 6:00 p.m. on March 8, 1998, the alleged victim in this case, Darren Tackett ("Tackett"), was seated in the driver's seat of a parked automobile near a beverage store on Station Avenue in Ashtabula, Ohio. His wife, Karen Tackett, sat beside him in the front seat. Two other men, Lonnie R. Nelson, Jr. ("Nelson") and Joseph Hunt, were in the rear seat of the car. Tackett was having a conversation with a young man named Shyrone Lyons ("Lyons") through the open window of the vehicle.
While Tackett and Lyons conversed, appellant began to approach on a nearby sidewalk. Appellant and Tackett had known each other for a number of years as a result of growing up in the same neighborhood. Appellant indicated that he wanted to talk with Tackett as he walked up to the car. In order to speak with appellant, Tackett exited and stood alongside the vehicle. At that point, appellant became very agitated, and his demeanor turned hostile. According to Tackett, appellant began to yell something to the effect of "You're 5-0. You got my boy popped. I'm not selling you no more dope." Tackett understood the term "5-0" to be a street reference to the police.
Appellant became increasingly loud and angry. He kept insisting that Tackett owed him $70, but Tackett denied owing the money. The confrontation by the beverage store lasted for approximately two minutes. It ended with appellant stating that he was "going to go get my shit," and then running off. Tackett took this statement to mean that appellant was going to get his gun.
Tackett jumped back into the car and left the parking lot. As he drove the vehicle up Station Avenue, Tackett passed appellant as the latter was running on the sidewalk. Tackett proceeded to drive to the residence of appellant's father. Tackett wanted to inform appellant's father that his son was acting erratically and might be about to retrieve a gun. Upon arriving at the house, however, Tackett found no one there.
Tackett and his cohorts left the house and proceeded up a street called Seymour Drive. Shortly thereafter, Tackett reached an intersection with a stop sign. While Tackett's car was stopped at the intersection, appellant suddenly emerged from a gray van that was headed in the opposite direction down Seymour Drive. Tackett could not pull away from the stop sign because there was still oncoming traffic.
Appellant walked up to the stopped vehicle and aimed a gun at Tackett's temple through the open window. The passengers in the car yelled upon seeing the weapon. While holding the revolver with his right hand, appellant used his left hand to begin striking Tackett in the face. According to Tackett, appellant told him, "I'm going to kill you, punk mother fucker. You're the police."
Fearing for his life, Tackett smacked appellant's right hand away so that the gun was not pointed directly at his temple. Upon doing so, Tackett punched the car's gas pedal, accelerated into the intersection, and executed a left-hand turn. As Tackett drove away, appellant allegedly fired the weapon in the direction of the car.
Tackett immediately drove to the Ashtabula Police Department where he and his companions reported the incident and provided written statements. A police officer visually inspected Tackett's car, but did not find any signs of a bullet hole. The police subsequently took appellant into custody.
On April 8, 1998, the Ashtabula County Grand Jury returned a true bill charging appellant with three offenses: (1) attempted aggravated murder in violation of R.C. 2903.01 and 2923.02 with a firearm specification pursuant to R.C. 2941.14.5; (2) felonious assault in violation of R.C. 2903.11 with a firearm specification pursuant to R.C. 2941.14.5; and (3) having a weapon while under disability in violation of R.C. 2923.13. Appellant pled not guilty to the offenses.
The matter proceeded to a jury trial commencing on June 9, 1998. Tackett, his wife, and Nelson were among the state's witnesses. Although subpoenaed as a potential witness, Hunt failed to appear on the day of the trial. The Tacketts and Nelson gave consistent accounts of the events that transpired on March 8, 1998. The defense rested without calling any witnesses.
During the course of cross-examination, Tackett revealed that he was an informant for the Ashtabula County Narcotics Task Force. In this capacity, Tackett took part in undercover purchases of illegal drugs on behalf of the task force. Indeed, on several occasions, Tackett purchased crack cocaine from appellant.[1]
Tackett, however, testified that he did not owe appellant the $70 that the latter repeatedly demanded during the incident in question.
On June 10, 1998, the jury returned its verdicts. It acquitted appellant of the attempted aggravated murder charge, but convicted him of felonious assault with the firearm specification and having a weapon while under disability. Following the preparation of a presentence investigation report, the trial court held a sentencing hearing on September 4, 1998. At that time, the trial court sentenced appellant to four years in prison for the felonious assault conviction, with an additional three-year consecutive prison term for the R.C. 2941.14.5 firearm specification. The trial court further sentenced appellant to one year in prison for having a weapon while under disability, to be served concurrently with the sentence imposed for the felonious assault conviction.
From this judgment, appellant filed a timely notice of appeal with this court. He is represented by new counsel on appeal. Through this counsel, appellant now asserts the following assignments of error:
 "[1.] The trial court erred to the prejudice of appellant when it allowed the State of Ohio to use a peremptory challenge to dismiss a juror without requiring the State of Ohio to offer a satisfactory race-neutral explanation for the challenge.
 "[2.] The appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 "[3.] The trial court erred to the prejudice of appellant when it failed to instruct the jury properly on the Ohio Revised Code section 2941.14.5 firearm specification.
 "[4.] The appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."[2]
In his first assignment of error, appellant posits that the prosecution exercised a peremptory challenge during voir dire in a racially discriminatory manner. In Batson v. Kentucky (1986), 476 U.S. 79, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment precludes purposeful discrimination by a state in the exercise of peremptory challenges so as to exclude members of minority groups from service on petit juries. The Court in Batson
announced the standard by which a criminal defendant could establish a prima facie case of discrimination in the jury selection process. The defendant had to demonstrate the following: (1) he was a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire; and (3) these facts and other relevant circumstances raised an inference that the prosecutor used peremptory challenges to exclude individuals from the venire on account of their race.
In Powers v. Ohio (1991), 499 U.S. 400, the Supreme Court modified its prior holding in Batson. The defendant in Powers was a white man who wanted to challenge the exclusion of black jurors from service on a petit jury. The Court held that a defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race. In the wake of Powers, therefore, it is the race of the prospective juror alone that triggers an inquiry into the jury selection process upon the filing of a Batson challenge by a defendant.State v. Hernandez (1992), 63 Ohio St.3d 577, 583.
In order to establish a prima facie case of purposeful discrimination, an accused must currently demonstrate: (a) that members of a recognized racial group were peremptorily challenged; and (b) that the facts and other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their race. State v. Hill (1995),73 Ohio St.3d 433, 444-445. If the defendant makes a prima facie case of discrimination, then the burden shifts to the state to come forward with a neutral explanation for excluding the prospective jurors. Id. at 445. The prosecution's explanation need not rise to the level justifying the exercise of a challenge for cause. State v. Cook (1992), 65 Ohio St.3d 516, 519;Hernandez, 63 Ohio St.3d at 582, quoting Batson. If the trial court finds that the state did not possess discriminatory intent when exercising its peremptory challenges, the decision will not be reversed on appeal absent a determination that the finding was clearly erroneous. Hill, 73 Ohio St.3d at 445; Hernandez,63 Ohio St. 3d at 583. See, also, Hernandez v. New York (1991),500 U.S. 352.
In the case sub judice, the state exercised a peremptory challenge to excuse a venireman named Michael Currie ("Currie") from service on the jury. Currie is black, as is appellant. On appeal, appellant raises a Batson challenge to the state's peremptory dismissal of Currie from the jury.
In order to establish a prima facie case of purposeful discrimination, appellant had to demonstrate that Currie was a member of a recognized racial group and that the facts and other relevant circumstances raised an inference that the prosecutor used the peremptory challenge to exclude Currie based on his race. It was in the trial court's discretion to decide whether such an inference had arisen. See Cook, 65 Ohio St.3d at 519.
The burden shifted to the state to articulate a neutral reason for excluding Currie only if the trial court found that appellant satisfied his initial burden of establishing a prima facie showing of purposeful discrimination in the exercise of the peremptory challenge. See Hill, 73 Ohio St.3d at 445; Cook,65 Ohio St.3d at 519. In the absence of a prima facie showing of racial discrimination, the state may voluntarily offer race-neutral reasons underlying its peremptory challenge, but it is not obligated to do so. See, e.g., Hill, 73 Ohio St.3d at 445
(observing that "the prosecution voluntarily explained, in race-neutral terms, specific reasons for its peremptory challenges even in the absence of a prima facie showing"); Cook,65 Ohio St. 3d at 519 (noting that even though the trial court never made a finding that the defendant had established a prima facie case of discrimination, "the prosecutor did articulate neutral reasons for the peremptory exclusion of each black potential juror").
After the state dismissed Currie in the instant matter, defense counsel stated his belief that the prosecutor had challenged Currie based on race. The prosecutor and defense counsel approached the bench for a sidebar, whereupon the trial court inquired into the state's reasons for excusing Currie. Upon hearing the state's explanation, the trial court denied the Batson
challenge that had been asserted by defense counsel.
A review of record reveals that the trial court never made a finding that appellant had demonstrated a prima facie case of discrimination. Despite this, we will assume for purposes of this appeal that appellant made a prima facie showing. An inference could be drawn that the prosecutor used the peremptory challenge to exclude Currie based on his race because the transcript of the sidebar indicates that the state apparently believed that Currie was the only black member of the venire at the time the challenge was exercised.[3]
Even assuming arguendo that appellant established a prima facie case of racial discrimination, it is apparent from the record that the prosecution did articulate race-neutral reasons for the peremptory challenge of Currie. During the sidebar conference, the prosecutor offered three different grounds for excluding Currie as a prospective juror: (1) Currie indicated during voir dire that he was acquainted with appellant's father; (2) Currie also expressed that he was familiar with Lyons, the young man with whom Tackett was conversing in front of the beverage store and, therefore, a potential witness in the case; and (3) Currie stated that he intended to continue working his second shift job from 4:30 p.m. until 2:30 a.m. during the trial.
In our view, the third ground cited by the prosecutor was especially persuasive, to wit: that Currie intended to continue working his second-shift job during the course of the trial. InHill, the Supreme Court of Ohio concluded that the defendant had not established a prima facie case of racial discrimination in part because an excused juror stated during voir dire that he planned to continue working second shift, until 11:00 p.m., even while serving on the jury. Hill, 73 Ohio St.3d at 445. A prospective juror's stated intent to continue working a second or third shift job is not conducive to being an alert and effective petit juror during the daytime hours. Standing alone, Currie's expressed determination to continue working his second shift job was a sufficient basis upon which to excuse him from service on the jury.
Upon review, it is obvious that the prosecution offered at least one valid, race-neutral reason underlying its peremptory challenge of Currie. The trial court's finding that the state did not possess discriminatory intent in the exercise of the peremptory challenge on Currie was not in error. The first assignment is meritless.
In his second assignment of error, appellant contends that he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section10, Article I of the Ohio Constitution. In order to demonstrate ineffective assistance of trial counsel, a criminal defendant must satisfy a two-part test as formulated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668.
First, the defendant must show that counsel's performance was deficient in that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-688. Second, it must be shown that counsel's deficient performance prejudiced the defendant. Id. at 687. In this context, prejudice means that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694. A defendant must make both showings if his or her claim of ineffective assistance of counsel is to succeed.
The Supreme Court of Ohio has endorsed the Strickland test for determining the issue of ineffective assistance of counsel. See,e.g., State v. Bradley (1989), 42 Ohio St.3d 136, 141-142. This court has likewise embraced the Strickland standard. See, e.g.,State v. Patterson (May 22, 1998), Trumbull App. No. 96-T-5439, unreported, at 7, 1998 WL 310737; Mentor v. Richardson (Dec. 26, 1997), Lake App. No. 96-L-155, unreported, at 3-4, 1997 WL 799567.
In the case at bar, appellant claims that his counsel was ineffective for failing to undercut two of the three aforementioned reasons offered by the prosecutor to justify the peremptory challenge of Currie. As described previously, the first two grounds cited by the state for dismissing Currie from jury service were as follows: (1) Currie indicated that he was acquainted with appellant's father; and (2) Currie stated that he was familiar with Lyons, a potential witness in the case.
On appeal, appellant maintains that his counsel should have brought certain matters to the trial court's attention. First, with respect to Currie knowing his father, appellant argues that his attorney should have pointed out that a prospective white juror, Robert Reiser ("Reiser"), was allowed to remain on the panel, even though Reiser was even more closely acquainted with appellant's father.
Second, appellant claims that counsel had a duty to inform the trial court at the close of the evidence that the state had rested its case without calling Lyons as a witness. Because Lyons was ultimately not called to testify, appellant suggests that Currie should not have been dismissed from the venire on the basis of their acquaintanceship.
Even if we assume for the sake of argument that counsel's performance was deficient in the two ways alleged, the ultimate impact of this representation could not have resulted in prejudice to appellant. As previously concluded, the third ground offered by the prosecutor to justify its use of the peremptory challenge was, by itself, a valid race-neutral reason for excluding Currie, to wit: Currie intended to continue working his second-shift job during the trial. Consequently, no prejudice could have arisen from defense counsel's failure to undermine the first two grounds.
Thus, while it may be debatable as to whether appellant met the first prong of the Strickland test for ineffective assistance of counsel, there can be no doubt that he clearly failed to satisfy the second criterion requiring a prejudicial effect on the outcome of the proceeding. Simply stated, appellant suffered no detriment because the state had a race-neutral reason for using one of its allotted peremptory challenges to exclude Currie from service on the jury. The second assignment is without merit.
In his third assignment of error, appellant postulates that the trial court erred by failing to instruct the jury on the R.C. 2941.14.5 firearm specification. As described previously, the second count of the indictment set forth a charge of felonious assault with an accompanying firearm specification. The charge and specification read as follows:
 "On or about the 8th day of March, 1998, in the City of Ashtabula, Ashtabula County, Ohio, one JAMES MARELL HOLLEY did knowingly cause or attempt to cause physical harm to Darren Tackett, by means of a deadly weapon or dangerous ordnance, as defined in Section 2923.11 of the Revised Code, to wit: a handgun.
 "SPECIFICATION TO COUNT TWO: The Grand Jurors further find and specify that JAMES MARELL HOLLEY did have a firearm on or about his person or under his control while committing this offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense in violation of Section 2941.14.5 of the Ohio Revised Code."
The specification was modeled after the example contained in R.C. 2941.14.5 and fully complied with the statutory requirements. This specification subjects the offender to a mandatory three-year prison term under R.C. 2929.14(D)(1)(a)(i) for displaying a firearm, brandishing a firearm, indicating possession of a firearm, or using a firearm to facilitate the offense.
The three-year firearm specification in R.C. 2941.14.5 is distinguished from the one-year firearm specification set forth in R.C. 2941.14.1. The latter statute simply requires the prosecutor to specify in the indictment that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.14.1(A). If this specification is proven beyond a reasonable doubt, then the offender is subject to a mandatory one-year prison term under R.C.2929.14(D)(1)(a)(i).
Appellant does not dispute that the indictment properly charged him with the three-year firearm specification pursuant to R.C. 2941.14.5. Instead, appellant takes issue with the trial court's alleged omission of jury instructions regarding the firearm specification.
The initial question presented is whether a trial court must instruct a jury on the elements of a firearm specification. There is authority to suggest that the trial court has an affirmative duty to instruct the jury on the elements of the firearm specification, in addition to schooling the jurors on the elements of the underlying offense to which the specification is attached. In State v. Tyson (1984), 19 Ohio App.3d 90, 94, the First District Court of Appeals held:
 "[T]he fact-finder must separately address and respond to the specification by way of substantive findings, apart from the underlying criminal offense, in order to effect a conviction on the specification. In order to accomplish same, the trial judge must instruct a jury as to the elements of the R.C. 2941.14.1 specification separately and apart from the underlying criminal offense, and must provide a jury form separately responsive to specification instructions." (Footnotes omitted.)
The court in Tyson was analyzing the R.C. 2941.14.1 firearm specification that existed at the time. In the wake of the passage of S.B. 2 in Ohio, effective July 1, 1996, there are now two distinct firearm specifications, to wit: the R.C. 2941.14.1 one-year specification and the R.C. 2941.14.5 three-year specification. The logic expressed in Tyson, however, still applies to the current versions of the firearm specification statutes. Similarly, other appellate courts have adopted the Tyson
holding to the effect that the trial court must instruct the jury as to the elements of a firearm specification separately and apart from the underlying criminal offense. See, e.g., State v. Holston (Mar. 10, 1997), Stark App. No. 1996 CA 00012, unreported, at 3, 1997 WL 117187; State v. Phillips (Apr. 13, 1989), Cuyahoga App. No. 55214, unreported, at 11, 1989 WL 36707.
Upon review, we agree that the trial court should separately instruct the jury as to the elements of the R.C. 2941.14.1 or 2941.14.5 firearm specification. After orally instructing the jurors regarding the elements of the firearm specification, the trial court should provide the jury with verdict forms that expressly correspond to its instructions. In this way, the jury can render a conviction on the firearm specification that is distinct from the underlying criminal offense.
In the case at bar, appellant maintains that the trial court did not include any oral instructions to the jury with respect to the R.C. 2941.14.5 specification that was appended to the charge of felonious assault. The transcript reveals that the trial court commenced its jury instructions on the felonious assault count in this manner:
 "Before you can find the defendant guilty of Felonious Assault, you must find beyond a reasonable doubt that on or about the 8th day of March, 1998, in the City of Ashtabula, Ashtabula County, Ohio, the defendant, James Marell Holley, did knowingly cause or attempt to cause physical harm to Darren Tackett by means of a deadly weapon, to wit: a handgun."
Thereupon, the trial court instructed the jury on the following elements subsumed by the felonious assault charge: knowingly, cause, attempt, physical harm, deadly weapon, and handgun. With regard to the last element, the trial court stated that a handgun "means any firearm designed to be fired while being held in one hand." See R.C. 2923.11(C). Since the definition of a "handgun" invoked the term "firearm," the trial court defined "firearm" in the manner prescribed by R.C.2923.11(B).
Thus, the trial court did define the term "firearm" in the context of instructing the jury on the elements of the underlying offense of felonious assault. The trial court explicitly told the jury that this definition also applied for purposes of the R.C. 2941.14.5 firearm specification. Pursuant to R.C. 2941.14.5(C), this was the proper definition to be given to the jury.
Beyond this, however, the trial court did not instruct the jury as to the other aspects of the firearm specification. Specifically, the trial court did not provide the jury with any insight into what it means for the offender to have a firearm on or about the offender's person or under the offender's control while committing the offense or to display the firearm, brandish the firearm, indicate that the offender possesses the firearm, or use the firearm to facilitate the offense.
In this regard, the trial court simply read the verdict forms aloud to the jury at the close of the instructions. The felonious assault form was a two-page document. On the first page, the jury was asked to insert the phrase "guilty" or "not guilty" to the charge of felonious assault. On the second page, the jury was asked to insert the response "did" or "did not" into the firearm specification. The language of the firearm specification was substantially similar to the language contained in the indictment which, in turn, was modeled after the text of R.C. 2941.14.5.
Thus, the question presented is whether the trial court adequately instructed the jury with respect to the firearm specification by first defining the word "firearm" and then subsequently reading the language of the specification to the jurors as it appeared on the verdict form. We conclude that the trial court should have included more detailed instructions to the jury on the other elements of the firearm specification.
At a minimum, the trial court should have defined what it meant for appellant to have had the firearm "on or about the offender's person or under the offender's control" while committing the offense of felonious assault. Ohio Jury Instructions contain a definition for this element as it is used in the context of the one-year firearm specification under R.C. 2941.14.1. See 4 Ohio Jury Instructions (1997), Section 413.37, at 92. The same language could obviously be employed to describe what is meant by "on or about the offender's person or under the offender's control" as that phrase is used in R.C. 2941.14.5.
We would note, however, that Ohio Jury Instructions do not currently contain a sample jury instruction for the three-year firearm specification under R.C. 2941.14.5. Ohio Jury Instructions have not been updated since this specification came into existence on July 1, 1996. As a result, there is no sample jury instruction defining what is meant by "displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Thus, the trial court presumably would have been left to its own devices when attempting to explain the second part of the R.C. 2941.14.5 firearm specification.
Counsel for appellant, however, failed to object to the jury charge. Crim.R. 30(A) states in part:
 "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
Pursuant to this rule, the failure to object to a jury instruction in a timely fashion generally constitutes a waiver of any claimed error relative to the instructions. Under Crim.R. 52(B), however, this court has the power to recognize plain error or defects involving substantial rights even if they were not brought to the attention of the trial court. State v.Moreland (1990), 50 Ohio St.3d 58, 62.
In the context of a criminal case, a court of review should invoke the plain error doctrine only under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Jenks (1991), 61 Ohio St.3d 259,282; State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus; State v. Hackett (Mar. 26, 1999), Trumbull App. No. 97-T-0232, unreported, at 15, 1999 Ohio App. LEXIS 1228. It is often said that plain error does not exist unless, but for the error, the outcome of the proceeding would have been different.Jenks, 61 Ohio St.3d at 282; Moreland,50 Ohio St.3d at 62; Long, 53 Ohio St.2d at paragraph two of the syllabus; Hackett, 1999 Ohio App. LEXIS 1228, at 15.
In the instant matter, it can not be said that the trial court's failure to instruct the jury on the specific aspects of the firearm specification amounted to plain error. The Supreme Court of Ohio has held that the "failure of a trial court to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does notper se constitute plain error under Crim.R. 52(B)." (Emphasissic.) State v. Adams (1980), 62 Ohio St.2d 151, paragraph two of the syllabus.
In this case, the trial court did provide the jury with the correct definition of a "firearm" as set forth in R.C. 2923.11(B). It is true that the trial court should have also instructed the jury on the other elements of the firearm specification to the extent that a model instruction is provided in Ohio Jury Instructions. Any omission on the part of the trial court, however, most definitely did not alter the outcome of the proceeding.
In convicting appellant of felonious assault, the jury obviously believed that he drew a gun on Tackett while the latter was stopped in traffic on Seymour Drive and then discharged the weapon as Tackett sped away in the car. As such, it can not seriously be questioned that the jury found beyond a reasonable doubt that appellant had a firearm on or about his person or under his control while committing the offense and that appellant displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used the firearm to facilitate the offense of felonious assault.
Therefore, notwithstanding the technical omissions in the trial court's instructions, the jury properly convicted appellant of the R.C. 2941.14.5 firearm specification. The third assignment lacks merit.
In his fourth and final assignment of error, appellant contends that his counsel was ineffective for failing to object to the trial court's lack of jury instructions regarding the firearm specification. As explained above, however, the result of the trial would not have been different even if counsel had filed an objection to the trial court's proposed jury charge as it related to the firearm specification. Appellant can show no prejudice, thereby failing to satisfy the second prong of the Strickland
standard for ineffective assistance of trial counsel. Since appellant has not met the second prong of Strickland, we need not consider whether counsel's performance fell below an objective standard of reasonableness (i.e., the first prong). The fourth assignment lacks merit.
Based on the foregoing analysis, the assignments of error are not well-taken. Accordingly, the judgment of the trial court is affirmed.
NADER, J., O'NEILL, J., concur.
[1] In a separate case in the trial court, appellant pled guilty to two counts of trafficking in cocaine. These convictions stemmed from appellant's cocaine sales to Tackett.
[2] Although the second and fourth assignments of error are identically worded, each relates to a different aspect of the representation afforded appellant by his trial counsel. Therefore, we will address them separately.
[3] As it turned out, there was also a black female in the pool of prospective jurors. Although Currie was excused from service, the record clearly demonstrates that this woman ultimately went on to serve on the jury. It is worth noting that the state did not utilize its final two peremptory challenges before the jury was empanelled. Thus, the state did not exercise its right to dismiss the black woman, despite the fact that it still had discretionary challenges available.